UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

KATHY JESMER,

                             Plaintiff,

v.                                                                 7:16-CV-1116
                                                                 (GTS/WBC)
COMMISSIONER OF SOCIAL SECURITY,

                             Defendant.
_____

APPEARANCES:                                           OF COUNSEL:

KATHY JESMER, PRO SE
59 S. Gordon St.
Gouverneur, NY 13642

U.S. SOCIAL SECURITY ADMIN.              Sergei Aden, Esq.
OFFICE OF REG'L GEN. COUNSEL – REGION II
  Counsel for Defendant
26 Federal Plaza – Room 3904
New York, NY 10278

William B. Mitchell Carter, U.S. Magistrate Judge,

## REPORT and RECOMMENDATION

      This matter was referred for report and recommendation by the Honorable Judge Suddaby, Chief United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(d). (Dkt. No. 20.) This case has proceeded in accordance with General Order 18.

      Currently before the Court, in this Social Security action filed by Kathy Jesmer ("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the Commissioner") pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), is Defendant's motion for judgment on the pleadings. (Dkt. No. 19.) Plaintiff filed a letter with this Court

requesting review. (Dkt. No. 17.) For the reasons set forth below, it is recommended that Defendant's motion be denied and the matter be remanded under Sentence Four of 42 U.S.C. § 405(g).

## I.     RELEVANT BACKGROUND

### A.     Factual Background

Plaintiff was born in 1962. (T. 51.) She completed high school. (T. 173.) Generally, Plaintiff's alleged disability consists of depression, high blood pressure, interstitial cystitis ("IC"), pelvic impairment, and low potassium. (T. 51.) Her alleged disability onset date is February 1, 2013. (T. 38.) Her date last insured is December 31, 2018. (T. 22.)[1] She previously worked as a habilitation assistant. (T. 174.)

### B.     Procedural History

On June 24, 2013, Plaintiff applied for a period of Disability Insurance Benefits ("SSD") under Title II of the Social Security Act. (T. 60.) Plaintiff's application was initially denied, after which she timely requested a hearing before an Administrative Law Judge ("the ALJ"). On December 8, 2014, Plaintiff appeared before the ALJ, Marie Greener. (T. 36-50.) On March 2, 2015, ALJ Greener issued a written decision finding Plaintiff not disabled under the Social Security Act. (T. 16-35.) On August 3, 2016, the Appeals Council ("AC") denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. (T. 1-6.) Thereafter, Plaintiff timely sought judicial review in this Court.

### C.     The ALJ's Decision

---

[1] Elsewhere in the record Plaintiff's date last insured is listed at December 31, 2017. (T. 51.) Neither party disputes the ALJ's finding of December 31, 2018.

2

Generally, in her decision, the ALJ made the following five findings of fact and conclusions of law. (T. 22-31.) First, the ALJ found that Plaintiff met the insured status requirements through December 31, 2018 and Plaintiff had not engaged in substantial gainful activity since February 1, 2013. (T. 22.) Second, the ALJ found that Plaintiff had the severe impairments of bilateral hip degenerative joint disease and IC. (*Id.*) Third, the ALJ found that Plaintiff did not have an impairment that meets or medically equals one of the listed impairments located in 20 C.F.R. Part 404, Subpart P, Appendix. 1. (T. 24.) Fourth, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform light work, except Plaintiff could not climb ladders/ropes/scaffolds and could only occasionally stoop. (T. 25.)[2] Fifth, the ALJ determined that Plaintiff was incapable of performing her past relevant work; however, there were jobs that existed in significant numbers in the national economy Plaintiff could perform. (T. 30.)

## II.   BRIEFING

Plaintiff was represented by counsel at her administrative hearing and in the initial filing of her complaint with this Court. However, Plaintiff's counsel withdrew as representation before a brief was submitted. (Dkt. No. 13.) Plaintiff, proceeding *pro se*, did not file a brief in this matter. However, Plaintiff filed a letter asserting that the ALJ "broke the law" and requested that her case be reviewed. (Dkt. No. 17.)

---

[2] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time. 20 C.F.R. § 404.1567(b).

In this District, General Order 18 cautions plaintiffs that "Plaintiff's brief is the only opportunity for Plaintiff to set forth the errors Plaintiff contends were made by the Commissioner of Social Security that entitle Plaintiff to relief.  The failure to file a brief as required by this Order will result in the consideration of this appeal without the benefit of Plaintiff's arguments and may result in a decision heavily influenced by the Commissioner's version of the facts and subsequent dismissal of your appeal." N.D.N.Y. General Order No. 18 at 4.[3]  General Order 18 thus states that the Court will "consider" the case notwithstanding a plaintiff's failure to file a brief, albeit in a way that might be "heavily influenced by the Commissioner's version of the facts."  *Id.*  In a case such as this, where Plaintiff is proceeding *pro se*, General Order No. 18's promise of a consideration of the merits complies with the special solicitude that the Second Circuit mandates for *pro se* litigants.  Accordingly, the Court has, despite Plaintiff's failure to file a brief, examined the record to determine whether the ALJ applied the correct legal standards and reached a decision based on substantial evidence.  *See Gregorka v. Comm'r of Soc. Sec.,* No. 6:13-CV-1408, 2015 WL 3915959, at *4 (N.D.N.Y. June 25, 2015).

In support of her motion for judgment on the pleadings, Defendant makes one argument.  Defendant argues that substantial evidence supports the ALJ's decision and it should be affirmed.  (Dkt. No. 19 at 12-18 [Def.'s Mem. of Law].)

## III.   RELEVANT LEGAL STANDARD

### A.   Standard of Review

---

[3]   Plaintiff was provided a copy of General Order 18 on March 1, 2017.  (Dkt. No. 14.)

A court reviewing a denial of disability benefits may not determine de novo whether an individual is disabled.  See 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence.  *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971).  Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.  *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and

5

despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### A.     Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. *See* 20 C.F.R. § 404.1520. The Supreme Court has recognized the validity of this sequential evaluation process. *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a 'residual functional capacity' assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014).

## IV.    ANALYSIS

The RFC is an assessment of "the most [Plaintiff] can still do despite [his or her] limitations." 20 C.F.R. § 404.1545(a)(1). In formulating an RFC an ALJ will base her determination on "all of the relevant medical and other evidence" in the record. *Id.* at § 404.1545(a)(3).

6

The opinion of a treating source will be given controlling weight if it "is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. §§ 404.1527(c)(2);[4] *see Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015).

The following factors must be considered by the ALJ when deciding how much weight the opinion should receive, even if the treating source is not given controlling weight: "(i) the frequency of examination and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's consistency with the record as a whole; and (iv) whether the opinion is from a specialist." 20 C.F.R. § 404.1527(c)(2)(i)-(iv).  The ALJ is required to set forth her reasons for the weight he assigns to the treating physician's opinion. *Id.*, *see also* SSR 96-2p, 1996 WL 374188 (July 2, 1996); *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000) (quoting *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir.1998)).

### A. Mental RFC Determination

The ALJ's mental RFC determination was supported by substantial evidence. Although the ALJ determined at step two that Plaintiff did not have a severe mental impairment, the ALJ thoroughly discussed medical evidence pertaining to Plaintiff's mental health impairment in her step four analysis.  (T. 23-24, 28.)

Basic mental work activities include the ability to: understand, carry out, and remember simple instructions; use judgment; respond appropriately to supervision, co-

---

[4] Effective March 27, 2017, 20 C.F.R. § 404.1527 has been amended, as have other regulations and SSRs cited herein. Nonetheless, because Plaintiff's social security application was filed before the new regulations and SSRs went into effect, the Court reviews the ALJ's decision under the earlier regulations and SSRs.

7

workers and usual work situations; and deal with changes in a routine work setting.  20 C.F.R. § 404.1521(b)(3)-(6), see also SSR 85-15 (S.S.A. 1985).

The ALJ afforded "great weight" to the medical opinions of consultative examiner, Dennis Noia, Ph.D. and non-examining State agency medical consultant, Dr. Dambrocia.  (T. 28.)  Dr. Noia opined that Plaintiff had no limitations in understanding and following simple instructions and directions, and no limitations in performing simple and complex tasks.  (T. 25-26.)  He opined she had no limitations in: maintaining attention and concertation; attending to a routine and maintaining a schedule; learning new tasks; and making appropriate decisions.  (T. 251.)  Dr. Noia opined Plaintiff was able to relate to and interact well with others, and had mild limitations regarding her ability to deal with stress.  (Id.)  Dr. Dambrocia opined that Plaintiff's mental impairment was non-sever based on his review of the medical evidence in the record.  (T. 55.)  Plaintiff did not receive mental health treatment.  (T. 23, 44.)

Therefore, substantial evidence in the record, as outlined above, supported the ALJ's determination that Plaintiff's mental impairment did prevent Plaintiff from performing the basic mental demands of work.  It is recommended that the ALJ's mental RFC determination be upheld.

### B. Physical RFC Determination

Plaintiff's primary care physician, Jon Emerton, M.D., completed a medical source statement on October 22, 2014.  (T. 264-267.)  Dr. Emerton listed Plaintiff's diagnosis as hypertension and IC.  (T. 264.)  He indicated that he did not know how many city blocks Plaintiff could walk, how long Plaintiff could sit, or how long Plaintiff could stand.  (Id.)  He opined that Plaintiff would need to shift positions at will.  (Id.)

Dr. Emerton indicated that during a workday Plaintiff would need to take unscheduled breaks every one to two hours for 15 to 20 minutes. (T. 265.) He opined that Plaintiff could frequently lift and carry less than 10 pounds, occasionally lift and carry 10 pounds, rarely carry 20 pounds, and never carry 50 pounds. (*Id.*) He opined Plaintiff could frequently look down, turn her head, look up, and hold her head in a static position. (*Id.*) He opined Plaintiff could occasionally: twist, stoop, crouch/squat, and climb stairs. (*Id.*) He opined Plaintiff could never climb ladders. (*Id.*) He opined Plaintiff could frequently use her hands. (T. 265-266.) He opined that Plaintiff's pain or other symptoms would "occasionally" interfere with her attention and concentration. (T. 266.)

On September 5, 2013, consultative examiner Elke Lorensen, M.D., examined Plaintiff and provided a medical source statement. (T. 252-255.) She opined Plaintiff had no limitations in sitting, standing, or walking. (T. 255.) She opined Plaintiff had "moderate" limitations in her ability to bend, lift, and reach. (*Id.*)

Here, the ALJ failed to properly assess Plaintiff's impairments due to her IC, specifically her need to frequently use a bathroom. First, the ALJ erred in her evaluation of Dr. Emerton's medical opinion that Plaintiff required unscheduled breaks every one to two hours for 15 to 20 minutes. The ALJ reasoned that Dr. Emerton's opinion was "speculative" and "unsupported by cited clinical findings." (T. 28.) In making her determination, the ALJ did not provide support for her determination. Dr. Emerton's opinion does not appear to be based on speculation, but on his treatment and observations of Plaintiff. Dr. Emerton wrote in his medical source statement that the limitations he provided were based on his knowledge of Plaintiff and her diagnosis.

9

(T. 267.)  The limitation he imposed in his medical source statement was reinforced by similar limitations he imposed elsewhere in the record.  For example, Dr. Emerton noted in a request of a handicapped parking permit that Plaintiff required "quick and close access to bathroom facilities" due to her IC.  (T. 261.)  Treatment notations contained complaints that urination "keeps [Plaintiff] up all night."  (T. 232.)  Further, evidence in the record supported Dr. Emerton's opinion.  Plaintiff reported to her urologist that she had frequency of every hour.  (T. 223.)  Plaintiff indicated in her Function Report that "frequent urination" and "frequent bathroom trips" limited her ability to perform daily activities and care for herself.  (T. 159-161, 165.)  At the hearing, when asked why she felt she would not be able to work, Plaintiff responded that she had to go to the bathroom "so many times a day" and she needed to be near a bathroom "at all times." (T. 42-43.)  Plaintiff testified that she uses the bathroom "[o]ver 40 times a day."  (T. 43.) Therefore, contrary to the ALJ's reasoning, Dr. Emerton's opinion appears to be consistent with Plaintiff's diagnosis of IC, based on his treatment and observation of Plaintiff, and supported by Plaintiff's testimony.  Remand is therefore recommended for a proper analysis of Dr. Emerton's opinion based on the factors outlined in 20 C.F.R. 404.1527(c).

      Second, the ALJ failed to properly consider the effects of Plaintiff's IC on her ability to perform work.  SSR 02-2p provides a guideline for evaluating IC at all steps of the sequential process.  SSR 02-2p (S.S.A.), 2002 WL 32063799.[5]  SSR 02-2p states in relevant part, "[t]he presence of urinary frequency alone can necessitate trips to the bathroom as often as every 10 to 15 minutes, day and night."  *Id.* at *5.  Defendant

---

[5] Effective March 18, 2015, after the ALJ's determination, SSR 02-2p was rescinded and replace by SSR 15-1p.

argues that the ALJ reasonably observed that the evidence did not support the proposition that Plaintiff required bathroom access beyond that already accounted for in an ordinary work setting. (Dkt. No. 19 at 15-16 [Def.'s Mem. of Law].) However, the ALJ provided no such discussion. To be sure, the ALJ discussed, and rejected, Dr. Emerton's opinion that Plaintiff required unscheduled breaks and "quick and close" access to a bathroom. However, the ALJ did not conclude that Plaintiff's frequent need to use the bathroom could be accommodated by regular work schedule. (T. 28-29.) The ALJ's decision, and subsequent RFC determination, were silent regarding Plaintiff's need to use a bathroom facility. As outlined above, Dr. Emerton and Plaintiff's reports of symptoms, indicated that she required some accommodation to use bathroom facilities. Because the need to frequently use a bathroom was a primary symptom of IC, a more detailed analysis of the limiting effects is required.

Overall, the ALJ erred in discounting Dr. Emerton's opinion regarding Plaintiff's need for unscheduled work breaks and "quick and close" access to a bathroom. *See Winchell v. Comm'r of Soc. Sec.*, No. 5:14-CV-543, 2015 WL 7432377, at *3 (N.D.N.Y. Nov. 23, 2015) ("it was legal error to discount Dr. Vatra's opinion with respect to Winchell's need for frequent unscheduled bathroom breaks solely because his treatment notes do not indicate an increased use of the bathroom"); *Saunders v. Colvin*, 93 F. Supp. 3d 179, 183 (W.D.N.Y. 2015) (concluding ALJ failed to consider effect of IBS on claimant's ability to perform work where testimony included claim of "frequent, and typically urgent, need to use a restroom"). Therefore, it is recommended that this matter be remanded for a proper evaluation of Plaintiff's physical RFC determination. It is recommended that the ALJ reassess Dr. Emerton's opinion regarding Plaintiff's need

to have access to bathroom facilities and provide a discussion of Plaintiff's ability to perform a full range of light work given her IC symptomology.

Because remand is recommended for a proper evaluation of Plaintiff's IC symptomology, it is further recommended that the ALJ's physical RFC determination for light work be reevaluated. Dr. Lorensen's opinion, and to a degree Dr. Emerton's opinion, supported the conclusion that Plaintiff could perform the standing, walking, and sitting requirements of light work. However, it is unclear from the ALJ's decision how she reached the determination that Plaintiff could lift and carry up to 20 pounds occasionally and ten pounds frequently. Dr. Lorensen opined Plaintiff had a "moderate" limitations in her ability to lift and carry and Dr. Emerton opined that Plaintiff could "rarely" carry 20 pounds, "occasionally" carry ten pounds, and "frequently" carry less than ten pounds. Such limitations are not necessarily inconsistent with the ability to perform the lifting and carrying requirements of light work, especially given the longitudinal record. *See Roehm v. Comm'r of Soc. Sec.,* No. 5:11-CV-161 NAM/ATB, 2011 WL 6318364, at *5 (N.D.N.Y. Nov. 28, 2011), *report and recommendation adopted,* No. 5:11-CV-161, 2011 WL 6326105 (N.D.N.Y. Dec. 16, 2011) ("A moderate limitation in lifting and carrying is consistent with the ability to occasionally lift 20 pounds and frequently lift or carry ten pounds as found by the disability analyst. Dr. Ganesh's opinion was the same from both his 2005 and 2006 reports and, together with the specific RFC stated by the disability analyst, is consistent with an ability to perform light work."). However, because remand is recommended to assess other aspects of Plaintiff's RFC, it would be prudent for the ALJ to provide a more detailed analysis of Plaintiff's ability to lift and carry.

Overall, the ALJ's mental RFC was supported by substantial evidence in the record. However, remand is recommended for a proper evaluation of Dr. Emerton's opinion and physical RFC determination.

**ACCORDINGLY**, based on the findings above, it is

**RECOMMENDED**, that the Commissioner's motion for judgment on the pleadings be **DENIED**, and the matter be **REMANDED** for further proceedings under sentence four of 42 U.S.C. § 405(g) and consistent with this report**.**

Pursuant to 28 U.S.C. § 636 (b)(1) and Local Rule 72.1(c), the parties have **FOURTEEN (14) DAYS** within which to file written objections to the foregoing report. Any objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636 (b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated:     September 5, 2017

William B. Mitchell Carter
U.S. Magistrate Judge